# UNITED STATES BANKRUPTCY COURT
# FOR THE
# WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MICHAEL D. WEST | ) | |
| | ) | CASE NO. 05-11461 |
| Debtor(s) | ) | |
| | ) | |
| WILLIAM DAVID BELVEAL | ) | |
| | ) | AP NO. 06-1022 |
| Plaintiff(s) | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL D. WEST | ) | |
| | ) | |
| Defendant(s) | ) | |

## MEMORANDUM-OPINION

This matter came before the Court for trial on the Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. §523 and Denial of Discharge under §727 of Plaintiff William David Belveal ("Belveal") Against Debtor/Defendant Michael West ("Debtor"). The Court considered the testimony of the witnesses at trial, the documentary evidence and the written submissions of the parties. The Court will enter Judgment in favor of Belveal and against the Debtor. The following constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

**FINDINGS OF FACT**

In 1997, Belveal employed Debtor and Michael Autrey, owners of W & A Construction Company, to build two duplexes and one four-plex in Simpson County on seven acres owned by Belveal. The duplexes and four-plex were built by Debtor to Belveal's satisfaction.

Belveal wanted to continue to develop the property but could not obtain further financing. Debtor and Belveal began discussing the possibility of Debtor constructing additional four-plexes on Belveal's property and Belveal would receive a percentage of ownership in each unit. Debtor showed Belveal a $1.5 million Letter of Credit from United Planters Bank that he represented could be used to finance the construction. The parties agreed that Belveal would deed Debtor and Autrey a lot in exchange for their completion of a roadway into the tract of property. Debtor and Autrey began work on the roadway, but it was clear from the trial testimony that the road was never completed. Belveal, however, deeded over the land to Debtor and Autrey in accordance with the agreement. The value of the roadway was approximately $26,000. Debtor testified the roadway lacked only the final blacktop coating and cost him approximately $30,000 to construct. The four-plex was completed on the tract of property known as Lot 104. Belveal continues to collect rent on this property.

The parties subsequently agreed to the development of four-plexes on six additional lots. These are Lots 102, 106, 108, 110, 112 and 116. In order to memorialize their agreement, Debtor suggested that attorney Buddy Leach draft an Operating Agreement. The parties subsequently formed BAW, LLC, a Kentucky limited liability corporation, for the construction of the four-plexes on Belveal's real estate. As part of the agreement, Belveal would contribute four to five acres of

land, the roadway and water and sewer lines to BAW, LLC. In exchange, Debtor and Autrey would finance and construct the four-plexes.

Leach also drafted a Buy-Sell Agreement whereby Belveal indicated his intent to withdraw from BAW, LLC on or before June 30, 2001. In exchange for Belveal's 25% interest in BAW, LLC., BAW, LLC would convey to him a 100% ownership interest in one of the four-plexes and a 50% interest in another four-plex. The property was to be conveyed to Belveal by deed of general warranty with title to the property free and clear of all liens and mortgages.

Belveal conveyed the property referenced in the Buy-Sell Agreement to BAW, LLC via a Deed of Conveyance prepared by Leach. Another attorney, Edward Faye, also prepared Deeds of Conveyance on Lots 102 and 112 from BAW, LLC to Debtor and Autrey. These Deeds are of record in Simpson County and are dated January 11, 2000. These Deeds, however, were not actually recorded until January 4, 2001. These conveyances contain Belveal's signature although he testified he did not and would not have signed such Deeds.

Despite the unrecorded Deeds, Debtor began construction on the four-plexes. Union Planters Bank issued construction mortgages on Lots 102 and 112. Each mortgage was prepared by Leach with BAW, LLC listed as the mortgagor.

The records indicate similar activity on Lots 106 and 112. Deeds of Conveyance prepared by lawyer Trayce Cline from BAW, LLC to Debtor and Autrey were signed on February 9, 2000. These were not recorded until April of 2001. Debtor mortgaged the property to several different lenders and took out mortgages totaling $2,010,631 for six four-plexes, well above an estimated cost to complete the buildings of $800,000.

Only two of the six four-plexes were actually completed by Debtor and Autrey. The four remaining lots contained mortgages well in excess of the value of the property. Belveal received Lot 102, but not free and clear of a mortgage. Belveal did not receive the other 50% interest in a four-plex free and clear of any encumbrances.

Debtor testified that for some reason unknown to him, after he negotiated the lumber package for construction of all six of the four-plexes, Union Planters Bank decided not to fund the full Letter of Credit. At this point, Debtor contacted mortgage broker Larry Deaton to assist in financing the remainder of the project.[1]

Debtor alleges that Deaton convinced him that he could get favorable financing terms if the property was titled in his and Autrey's name, rather than BAW, LLC. Debtor also testified Deaton forged numerous signatures, including his to obtain the financing.

During the course of construction of the four-plexes, Debtor had special meeting minutes of BAW, LLC prepared which allowed him to borrow money from Franklin Bank & Trust for the purpose of financing the four-plexes. Belveal did not sign these minutes. Debtor also had special meeting minutes prepared at the same time whereby BAW, LLC was authorized to execute a deed in favor of Debtor and Autrey to a .322 acre tract of property. Belveal was shown two deeds. One deed transferred the property from BAW, LLC to Debtor and Autrey and another transferred property back to BAW, LLC. Debtor told Belveal that the property was being transferred to him and Autrey in order to obtain favorable financing loans for the construction. The property was to then

---

[1] Mr. Deaton was subsequently convicted of fraud and is serving time in prison for fraud on several unrelated mortgage transactions.

be immediately transferred back to BAW, LLC. This transfer back to BAW, LLC never took place and the properties were foreclosed upon.

Debtor testified that in 1996 after following a divorce he set up a revocable trust with his children listed as the beneficiaries and himself as Trustee. Debtor placed the Deed to his family home in the Trust. Pursuant to the terms of the revocable trust, the income and principal from the Trust went to Debtor during his lifetime. The children will not receive the benefit of the Trust until after Debtor's death. Debtor has never filed a tax return on behalf of the Trust, but used the corpus of the Trust as collateral to obtain loans for his business and on behalf of his brother. Debtor's testimony regarding the establishment and limitations of the Trust was not credible. His memory was quite good on some matters but "fuzzy" when the Trust details were not an advantage at trial. The Court had ample opportunity to assess Debtor's cogent versus "fuzzy" memory to recognize most of his testimony was unreliable.

Defendant filed a Voluntary Petition under Chapter 13 of the United States Bankruptcy Code in 2003. Shortly before that case went to hearing on whether it was filed in good faith, the case was dismissed as the debt level was determined to exceed the Chapter 13 debt allowance level. Approximately, two weeks later, Debtor had the terms of the revocable trust changed to an irrevocable trust. Debtor also deeded property he owned to the Trust.

On July 19, 2005, Debtor filed a Voluntary Petition seeking relief under Chapter 7 of the United States Bankruptcy Code. Debtor identified himself as the Trustee of the Trust in the Petition, but failed to list property he owned on the Petition. This property included his personal residence and other real estate transferred to the Trust. Debtor also failed to accurately list his income and interest in several construction companies.

## **LEGAL ANALYSIS**

Belveal seeks a judgment declaring Debtor's debt to him nondischargeable under 11 U.S.C. §523(a)(2)(A). In order to except a debt from discharge under this statute, Belveal had to prove by a preponderance of the evidence the following: (1) debtor obtained money through a material misrepresentation that at the time debtor knew was false or made with gross recklessness as to its truth; (2) debtor intended to deceive the creditor; (3) creditor justifiably relied on the false representation; and (4) that reliance was the proximate cause of the loss. In re Rembert, 141 F.3d 277, 280-81 (6th Cir. 1998). The debtor's intent may be determined by examining the totality of the circumstances. Id. Belveal met his burden of proof on each element.

The evidence clearly established that the Debtor induced Belveal to contribute his real estate to BAW, LLC in exchange for the promise of a completed lien free four-plex and a 50% ownership interest in another four-plex. Belveal contributed the real estate as agreed. Debtor was to obtain financing for the construction of the four-plexes and in fact obtained funding from Union Planters. However, Debtor also had Deeds prepared conveying the property to himself and Autrey. The intent to deceive is proven by the surrounding circumstances. These Deeds were not recorded until one year after they were prepared. Belveal was shown the Deeds whereby the property was to be conveyed back to BAW, LLC after favorable financing was obtained, but this never occurred. The properties were all mortgaged and the promised roadway was never completed. Belveal was clearly induced to contribute his real estate to the project based upon Debtor's false representations that he would fund the construction and return to Belveal a completed lien free four-plex and 50% ownership interest in another four-plex.

Belveal proved that his reliance on Debtor's false representation was the proximate cause of his loss.  Belveal needed only to show that his reliance was justifiable.  In re O'Bryan, 190 B.R. 290, 295 (E.D. Ky. 1995).  The Court finds Belveal's reliance was justified based on his prior successful dealings with Debtor and the fact that Debtor produced a $1.5 million Letter of Credit for the project.

The debt owed by Debtor to Belveal is nondischargeable under §523(a)(2)(A).  The debt established by Belveal at trial is as follows: (1) breach of the Buy-Sell Agreement consisting of the value of the real estate Belveal should have received free and clear of liens with a fair market value of approximately $318,000; (2) the real estate transferred out of BAW, LLC by Debtor and not reconveyed, but mortgaged by Debtor totaling approximately 1.9 acres at a fair market value of $180,000; and (3) loss rental on the 50% ownership interest in the four-plex ($490 per month for one unit from July 1, 2001 to July 19, 2005 (the date the Petition was filed)) or $47,040 for a total of $545,040.

Belveal also requested liquidated damages in the amount of $100 per day from June 15, 2000 to September 24, 2007 in accordance with the terms of the agreement concerning the road.  The Court determines in accordance with Kentucky law that the damage provision is more in the nature of a penalty than a reasonable amount reflecting anticipated or actual loss caused by the breach. Accordingly, it is not enforceable in Kentucky.  See, Mattingly Bridge Co., Inc. v. Holloway & Son Const. Co., 694 S.W.2d 702 (Ky. 1985), adopting Restatement (Second) of Contracts §356(1) (1981).

Belveal also requests that the Court deny Debtor a discharge under 11 U.S.C. §727(a)(2), (a)(3), (a)(4) and (a)(5).  Specifically, Belveal alleges that Debtor with intent to hinder, delay or

defraud transferred, removed or concealed property within one year before the date of the filing of the Petition, failed to keep or preserve books or records from which Debtor's financial condition can be determined, Debtor knowingly made a false oath, and Debtor failed to explain a loss of assets. While sufficient evidence exists to support a denial of discharge on each of the above referenced grounds, the Court need only address the first ground to deny Debtor a discharge.

Under 11 U.S.C. §727(a)(2)(A), two elements must be proven by a preponderance of the evidence: (1) a disposition of property, such as concealment, and (2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act of disposing of the property within one year before the date of the filing of the petition. In re Keeney, 227 F.3d 679 (6th Cir. 2000). Intent may be inferred from the circumstances surrounding the objectionable conduct. Id.

Even construing the trial evidence liberally in favor of the Debtor, as the Court must do in determining an objection to discharge, Debtor's discharge still must be denied. The Court finds the circumstances surrounding the creation and use of the Trust troubling. Under the terms of the Trust, Debtor had access to the principal and income during his lifetime, no tax returns were ever filed on behalf of the Trust and while Debtor testified that the purpose of the Trust was to benefit his children, he clearly used the Trust property as his own. He used it as collateral to obtain loans for himself and his brother and listed the property on his own financial statements as if he were the owner. Debtor failed to identify himself as the owner of the Trust property on his Bankruptcy Petition despite the fact that he treated it as his own.

The Trust was established more than one year prior to the filing of the Petition. Ordinarily, the timing of the establishment of the Trust would take it out of the purview of the statute. The Court, however, finds this situation analogous to the one presented in In re Keeney, 227 F.3d 679

(6th Cir. 2000).  There, the Court applied the "continuing concealment" doctrine to a debtor who had transferred property to his parents more than one year before the date of the filing of his petition but continued to use the property and pay the mortgage.  The court stated:

> Under the "continuing concealment" doctrine, a transfer made and recorded more than one year prior to filing may serve as evidence of the requisite act of concealment where the debtor retains a secret benefit of ownership in the transferred property within the year prior to filing.

Id. at 684, quoting Hughes v. Lawson, 122 F.3d 1237, 1240 (9th Cir. 1997).  The evidence established that Debtor maintained a beneficial interest in the Trust properties within the year prior to the filing of his Petition.

Additionally, Debtor failed to disclose on his Petition a piece of real estate that he conveyed to Countrywide in April 2007 in order to settle an adversary proceeding against him.  He also failed to list property he had acquired in 1993.  Similarly, Debtor failed to accurately list his business interest in various construction companies on his Statement of Affairs or to accurately reflect his income.

As in In re Keeney, 227 F.3d 679 (6th Cir. 2000), Debtor concealed his beneficial interest in several pieces of property.  The requisite intent to hinder, delay or defraud may be inferred from the circumstances surrounding Debtor's conduct with respect to these items.  See, Id. at 684.  Debtor's failure to properly identify these interests and significant holdings, warrants denial of his discharge under §727(a)(2)(A).

## **CONCLUSION**

For all of the above reasons, the Court will enter Judgment in favor of the Plaintiff William David Belveal on the Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. §523 and Denial of Discharge under §727 against Debtor/Defendant Michael West.

# UNITED STATES BANKRUPTCY COURT
# FOR THE
# WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MICHAEL D. WEST | ) | |
| | ) | CASE NO. 05-11461 |
| Debtor(s) | ) | |
| | ) | |
| WILLIAM DAVID BELVEAL | ) | |
| | ) | AP NO. 06-1022 |
| Plaintiff(s) | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL D. WEST | ) | |
| | ) | |
| Defendant(s) | ) | |

## JUDGMENT

Pursuant to the Memorandum-Opinion entered this date and incorporated herein by reference,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Judgment is entered in favor of the Plaintiff William David Belveal and against Debtor/Defendant Michael West on the Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. §523 and Denial of Discharge under §727. Judgment in the amount of $545,040 is entered in favor of Belveal and against the Debtor. Said amount is declared nondischargeable pursuant to 11 U.S.C. §523. Debtor is also denied a discharge pursuant to 11 U.S.C. §727.